PETERS, Judge.
This matter began as an action to partition both immovable and movable property. Pierre Valcour Miller, one of the owners in indivisión, appeals a judgment of the trial court, striking his attempt to add parties to the litigation who he claims are necessary for a partition of the immovable property. For the reasons set forth herein, we reverse the trial court’s judgment and remand for further proceedings.
DISCUSSION OF THE RECORD[1]
Pierre Valcour Miller owns an undivided interest in approximately 30,000 acres of im *499 movable property and the minerals thereunder, situated in Cameron and Vermilion Parishes. He and his seven siblings acquired the property from the estate |2of their parents, Dr. and Mrs. Martin 0. Miller. Some interests in the immovable property have since been transferred to nonfamily members, and other interests have been placed in trusts.
Although the original pleading is not a part of the designated record on appeal, the subsequent pleadings suggest that on October 20, 1989, Pierre Valcour Miller filed suit to effect a partition of the immovable property as well as the movable property owned in indivisión.[2] The original defendants were identified as Mary Lynn Miller Currier; Gregory 0. Currier, in his capacity as trustee of the “Currier Trusts”;[3] Margaret Marian Miller Green; F.L. DeSalvo,[4] in his capacity as trustee of the “Boulet Trusts”;[5] Mary Edna Miller Stoebner; Mary Edna Miller Stoebner and Richard Coleman Stoebner, in their capacities as trustees of the “Stoebner Trusts”;[6] Martin 0. Miller II and the First National Bank of Commerce in New Orleans, in their capacities as trustees for the Edna K. Miller Foundation;[7] Marie Diane Miller, interdict, through her curator, Martin 0. Miller II; Mary Rollins, wife offand Thomas Rollins; Hope E. Kaplan, wife of/and Gerald Kaplan; Susanne C. Hooper, wife of/and Charles Hooper; ¡-¡Max Kaplan;[8] SASI Min-erais Company; and Lee & Hite, a Texas Limited Partnership.
For reasons not clear in the record,[9] Pierre Valcour Miller dismissed his petition on March 14,1995. However, the dismissal executed by the trial court reserved to the original defendants the right to pursue any claims they had initiated by responsive pleadings to the appellant’s original petition and reserved to First South Production Credit Association and the Calcasieu Marine National Bank the right to pursue their claims initiated by their interventions in the original petition. These interventions are not a part of the designated record on appeal, but it appears that the intervenors' are creditors of Pierre Valcour Miller.
As of March 14, 1995, of the original defendants, only the Boulet Trusts had responded to the October 20, 1989 petition, and the response included a reeonventional demand against Pierre Valcour Miller. This recon-ventional demand is not a part of the designated record on appeal. Therefore, we have no record of the relief requested by the Boulet Trusts. On November 22, 1995, the reeonventional demand was amended to add Mary Lynn Miller Currier, the Currier Trusts, Margaret Marian Miller Green, Mary Edna Miller Stoebner, the Stoebner Trusts, the Edna K. Miller Foundation, and Marie Diane Miller as plaintiffs.[10] In their plead *500 ing, these new parties, together with the Boulet Trusts, sought an “en globo” partition by licitation of the immovable property owned in indivisión, which was described as 18,000 acres in Cameron Parish and 12,000 acres in Vermilion Parish.
|4In an amending pleading filed on January 18, 1996, these plaintiffs named an additional co-owner of the property, Republic Royalty Company, as a party-defendant and clearly asserted that they sought a partition of both the surface and mineral interests in the property. In both the November 22, 1995 pleading and the January 18, 1996 pleading, the plaintiffs claimed an 86.84% ownership interest in the immovable property sought to be partitioned.[11] These plaintiffs, together with Martin O. Miller II, are the appellees herein.
On May 10, 1996, Pierre Valcour Miller responded by filing a pleading in which, among other things, he asserted that the property should be partitioned in kind and that the plaintiffs’ ownership interest in the immovable property was less than 75%. In addition to the parties named in the original suit, he named the following parties as either defendants-in-reconvention, cross-claim defendants, or third-party defendants: Amoco Production Company; Myerl John Hebert; Martin O. Miller II; the State of Louisiana; Apache Corporation; Mobil Exploration & Producing U.S. Inc., as agent for Mobil Oil Exploration & Producing Southeast Inc.; Vintage Petroleum Inc.; Vastar Resources, Inc.; Scurlock Permian Corporation; Tennessee Gas Pipeline Company; Cholla Resources, Inc.; Presidio Exploration Inc.; Axix Energy Corporation;[12] Bammer Engineering, Inc.;[13] Williams Gas Marketing Company; Maxus Exploration Co.;[14] Louisiana Resources Pipeline Company; Republic Royalty |5Company; heirs of Estelle & D.Y. Doland; and the trustees for the Mary Lynn Miller Trust, Margaret Marian Miller Trust, Pierre Valcour Miller Trust, Mildred Ann Miller Trust, Judith Owen Miller Trust, Mary Edna Miller Trust, Martin O. Miller II Trust, and Marie Diane Miller Trust. The appellant requested that a notary public be appointed to make an inventory and appraisal of the property involved “to assist this court in determining the rights and titles of the parties in and to the surface and mineral interests thereunder and, in its discretion, [to] assist the court in directing the manner and condition of effecting this partition....”
On May 24, 1996, the plaintiffs moved to strike the appellant’s pleading, asserting that a number of the parties named by the appellant were named solely for the purpose of delaying the proceedings. On June 7, 1996, the appellant filed a supplemental pleading asserting that the named parties were necessary and indispensable parties to the litigation. On July 18, 1996, John M. Currier, as trustee of the Mary Lynn Miller Trust, and Martin O. Miller II, as alleged trustee of the Marie Diane Miller Trust, the Margaret Marian Miller Trust, and the Martin O. Miller II Trust, filed pleadings seeking the same relief as that sought by the plaintiffs.
Thereafter, other pleadings not related to the issue before this court were filed by the parties, and on January 21, 1997, the trial court held a hearing to dispose of all pending motions and exceptions. At the hearing, no evidence was adduced, and on that day, the trial court rendered judgment on sixteen separate matters. One of the sixteen rulings granted the motion to strike. Rather than dismiss the reconventional demand and cross-claim, the trial court gave the appellant thirty days to amend his pleadings and “allege with specificity” why he believed any of those listed should be made a party to the suit.
*501 |60n February 20, 1997, Pierre Yalcour Miller[15] attempted, by a supplemental pleading, to justify the addition of the parties stricken. In doing so, he identified eight categories of parties he considered necessary to the litigation. These categories included: mineral lessees who acquired interests pursuant to oil and gas leases affecting the property to be partitioned;[16] other parties claiming ownership of all or part of the mineral leases obtained by the lessees described;[17] parties having right-of-way agreements across the property;[18] parties claiming rights under pipeline and/or boardwalk leases;[19] parties claiming an interest in the surface and/or minerals on some of the property sought to be partitioned;[20] parties claiming a royalty interest on all or part of the property in question;[21] parties having an interest in a seismic permit and option to lease for oil, gas, and other minerals; [22] parties having an interest in a surface please;[23] and Myerl Hebert.[24]
On March 3, 1997, in response to this amendment, the appellees filed a new motion to strike appellant’s pleading. Eleven days later, they filed a motion to sever the issue of Myerl Hebert’s ownership in Tract 83 on the basis that Tract 83 was not a part of the original petition to partition. A hearing was held on these motions on April 15, 1997. After the hearing, the trial court rendered judgment ordering that the pleading filed by Pierre Valeour Miller on February 20, 1997, be stricken as to the parties listed above. In doing so, the trial court relied on La.R.S. 31:179 and La.Code Civ.P. arts. 641 and 642[25] to conclude that the action for partition would not
affect or extinguish any rights or interests in and to the lands subject to this partition belonging to those entities and persons sought to be joined by the stricken pleadings or any other owners of mineral rights or other real rights or personal rights or other interests in said lands unless named hereafter....
The trial court listed the following parties as the owners of 100% of the surface and minerals of the lands to be partitioned and the only parties at interest in the partition other than Calcasieu Marine National Bank of Lake Charles and First South Production Credit Association, as creditors of Pierre Yalcour Miller: Pierre Valeour Miller, individually and as administrator of the Max Kaplan Estate; Mary Lynn Miller Currier; *502 Gregory O. Currier, as trastee of the Currier Trusts; Margaret Marian Miller Green; Edward S. Rapier and Paul C. Perret, as cotrus-tees of the Boulet Trusts; Mary Edna Miller Stoebner; Mary Edna Miller Stoebner and Richard Coleman Stoebner as cotrustees of the Stoebner Trusts; Martin 0. Miller II; Martin 0. Miller II, the First | «National Bank of Commerce in New Orleans, and Diane D. Miller, as eotrustees of the Edna K. Miller Foundation; Marie Diane Miller, interdict, through her curator, Martin 0. Miller II; Mary M. Rollins, wife of/and Thomas Rollins; Hope E. Kaplan, wife of/and Gerald Kaplan; Suzanne C. Hooper, wife of/and Charles Hooper; Lee & Hite, a Texas Limited Partnership; and Republic Royalty Company & SASI Minerals Company. Pierre Valcour Miller, individually and as ancillary provisional administrator of the Succession of Max Kaplan, has appealed this judgment, asserting three assignments of error.
OPINION
The appellant asserts three assignments of error. The first two assignments relate to the question of whether the stricken parties are needed for a just adjudication of the issues involved in the partition. In his third assignment, the appellant contends that the trial court erred in ruling that the parties listed in the February 20, 1997 judgment are the owners of 100% of the surface and minerals subject to the partition action.
After a hearing, the trial court may “order stricken from any pleading any insufficient demand or defense or any redundant, immaterial, impertinent, or scandalous matter.” La.Code Civ.P. art. 964. Because motions to strike based on assertions that allegations in pleadings are immaterial are often used as dilatory tactics, such motions are disfavored and should be denied unless the moving party can clearly show that the allegations have no possible bearing on the subject matter of the litigation and are prejudicial to the moving party. Smith v. Gautreau, 348 So.2d 720 (La.App. 1 Cir.1977).
Prior to the enactment of Acts 1995, No. 662, § 1, which amended La.Code Civ.P. arts. 641 and 642, parties to any litigation were classified as either indispensable Lor necessary. Indispensable parties were defined in La.Code Civ.P. art. 641 as those whose interests in the litigation were such that a complete and equitable adjudication could not be reached unless they were joined, while La. Code Civ.P. art. 642 defined necessary parties as “those whose interests in the subject matter [were] separable and would not be directly affected by the judgment if they were not before the court, but whose joinder would be necessary for a complete adjudication of the controversy.” These classifications were eliminated by Acts 1995, No. 662, § 1, and replaced by a single category— parties needed for just adjudication. La. Code Civ.P. art. 641, as amended, defines such a party as follows:
A person shall be joined as a party in the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair or impede his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.
La.Code Civ.P. art. 642, as amended by Acts 1995, No. 662, § 1, now defines the method of determining whether joinder is feasible and reads as follows:
If a person described in Article 641 cannot be made a party, the court shall determine whether the action should proceed among the parties before it, or should be dismissed. The factors to be considered by the court include:
(1) To what extent a judgment rendered in the person’s absence might be prejudicial to him or those already present.
(2) The extent to which the prejudice can be lessened or avoided by protective provisions in the judgment, by the shaping of relief, or by other measures.
(3) Whether a judgment rendered in the person’s absence will be adequate.
*503 (4) Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
The trial court concluded that the contested parties were not needed for a just | ^adjudication of the partition issues on the basis of its interpretation of La.R.S. 31:179, which reads as follows: “If the owner of a mineral right or interest therein is not made a party to an action for partition of the land subject to his right or interest, the partition is not invalid, but the right or interest therein is not extinguished or otherwise affected.” This statute has also been amended since the litigation began. Prior to the enactment of Acts 1990, No. 971, § 1, La.R.S. 31:179 specifically provided that owners of mineral rights or interests were necessary parties to an action for partition.[26]
We do not find that the record contains sufficient evidence for the trial court to have reached the conclusion that the stricken parties are not needed for a just adjudication of the partition issue or that the listed parties own 100% of the surface and minerals. There was no evidence of ownership before the trial court. Although the parties acknowledge that those listed in the judgment of May 16, 1997, all have an ownership interest in the surface and minerals, it is disputed that they are the only owners of the property. Additionally, the appellant attempts to join parties who he asserts claim ownership in the land, claim a mineral interest affecting the land, or claim a servitude across the land. The nature of these claims and the type of partition may affect these interests. The record does not contain evidence as to how these claims arose. Thus, we do not know whether these are contractual or prescriptive claims. Assuming these prescriptive or contractual claims exist, and depending on how they came into existence, an action for partition may affect them. Specifically, if the claims are contractual, there is no evidence as to whether these claimed rights were granted by all or some of the co-owners.
Owners of mineral rights derived from fewer than all of the co-owners of the land burdened by the mineral rights should be aware that a partition by licitation will extinguish these mineral rights if they are made parties to the proceedings and the rights are appraised in accordance with the articles on appraisal, unless the co-owner granting the mineral right purchases the entirety of the land to be partitioned at the licitation.
Andrew L. Gates III, Partition of Land and Mineral Rights, 43 La.L.Rev. 1119, 1139 (1983).
Another issue not yet settled by the trial court, which is paramount in determining whether the parties are needed for a just adjudication, is whether the partition will be in kind or by licitation. Both the Louisiana Civil Code and the Louisiana Mineral Code, La.R.S. 31:1, et seq., contain provisions which establish interests of nonowners in partition actions. As a general rule, one who does not wish to remain as an owner of property in indivisión has a right to demand a partition. La.Civ.Code art. 807. In the case of a judicial partition, the court must decree a partition in kind if the property to be partitioned “is susceptible to division into as many lots of nearly equal value as there are shares and the aggregate value of all lots is not significantly lower than the value of the property in the state of indivisión.” La.Civ.Code art. 810. Only when the property cannot be partitioned in kind may the court require a partition by licitation, or by private sale. La.Civ.Code art. 811.
La.Civ.Code art. 812 provides that when property is subject to a real right, the partition of the property will not affect the real right. However, if a real right has been granted by less than all of the co-owners and the property is partitioned in kind, the real right, attaches only to the share allotted to the co-owner or co-owners who granted the real right. La.Civ.Code art. 813. When the property is partitioned by licitation, however, *504 any real right in the form of a mortgage, lien, or privilege granted by a co-owner attaches to his share of the proceeds of the sale. La.Civ.Code art. 815. Thus, li2Whether the partition is in kind or by licitation, the holders of real rights against the property have an interest in the proceedings.
Also, holders of predial servitudes may have an interest in the proceedings by which the property is divided. La.Civ.Code art. 714 provides that a predial servitude may be established on property owned in indivisión only with the consent of all of the co-owners. If a co-owner consents to the establishment of a predial servitude on his undivided part only, .he does not need the consent of the other co-owners, but the holder of the servitude cannot exercise his rights until the termination of the indivisión status and until the undivided part of the co-owner granting the servitude is established. La.Civ.Code art. 716. In the event of a partition by licitation wherein the co-owner who grants the predial servitude does not acquire ownership of the property, the right granted is extinguished. La.Civ.Code art. 718.
One would normally expect that the partition of land burdened by mineral rights will be by licitation. However, because of the possibility of a partition in kind, La.R.S. 31:178 directly addresses the conditions under which land burdened by a mineral right may be judicially partitioned in kind: ‘.
If land burdened by a mineral right or rights created by fewer than all of the co-owners of the land is judicially partitioned, a partition in kind may not be ordered unless it can be accomplished in such fashion that the allocation of tracts to the co-owners assures that both surface and mineral values of each tract are in the same proportion to the total value of the surface and the mineral rights respectively as each co-owner’s interest bears to the whole of the surface and mineral rights respectively and that partition in kind will not significantly impair the ability of any owner subject to the partition to develop the minerals on his own tract.
(Emphasis added).
It is implicit in the language of this statute that when the mineral right or rights have been created by all of the co-owners, a partition in kind will not affect those rights. Additionally, if all of the co-owners have granted a mineral right or interest, that right | iaor interest will not be affected by a partition by licitation. La.R.S. 31:186.
Although no evidence was adduced at either hearing on the motions to strike, the litigants acknowledged to the trial court that at least one of the mineral lease owners sought to be joined obtained its lease from less than all the co-owners. Additionally, counsel for Amoco Production Company specifically argued to the trial court that it claimed ownership of 295 acres of the property to be partitioned. Based on the record before us and the lack of evidence therein, we find that the trial court erred in granting the motion to strike the additional parties and in determining that the parties recognized in its judgment owned 100% of the surface and minerals to be partitioned.
We do not, by this opinion, conclude that the parties stricken are in fact parties needed for the just adjudication of the partition issue or that the parties listed by the trial court are not the only owners of the surface and minerals involved. Rather, we conclude only that the record is not sufficient to make such determinations. We also recognize that the addition of these parties makes an already complex action more complex. However, .the Louisiana Code of Civil Procedure provides the vehicles by which these issues can be refined and further provides the relief appropriate in the event it is determined that the additions are made for an improper purpose.
DISPOSITION
For the foregoing reasons, we reverse the judgment of the trial court and remand the matter for further proceedings. All costs of this appeal are taxed against the appellees.
REVERSED AND REMANDED.

. The record designated for this appeal does not contain the entire trial record but contains only *499 those portions addressing the limited issues before us. The factual history presented is limited to those facts that are clearly not in dispute.

. The division of the movable property is not at issue in this appeal.

. The Currier Trusts were identified as Deborah M. Currier Inter Vivos Trust No. 1, John M. Currier III Inter Vivos Trust No. 1, Elizabeth L. Currier Inter Vivos Trust No. 1, Stephanie M. Currier Inter Vivos Trust No. 1, and Gregory 0. Currier Inter Vivos Trust No. 1.

. F.L. DeSalvo was replaced as trustee of the Boulet Trusts by Edward S. Rapier and Paul C. Perret through amending pleadings filed January 18, 1996.

. The Boulet Trusts were identified as Stephen Paul Boulet, Jr., Trust; Brett Michael Boulet Trust; Robert Owen Boulet Trust; and Michele Ann Boulet Trust.

. The Stoebner Trusts were identified as Elizabeth Ann Stoebner Inter Vivos Trust No. 1, Susan Lynn Stoebner Inter Vivos Trust No. 1, and Mary Catherine Stoebner Inter Vivos Trust No. 1.

. Diane Miller was added as an additional trustee of the Edna K. Miller Foundation through amending pleadings filed January 18, 1996.

. Charles L. Ehrdhardt, Gerald Kaplan, and River Oaks Trust Co. were substituted as administrators of the Estate of Max Kaplan by amending pleadings filed January 18, 1996. By pleadings dated February 21, 1997, the appellant appeared as administrator of the succession.

. The designated record begins with pleadings filed on November 22, 1995.

. Although couched in terms of plaintiffs-in-reconvention, these parties are actually plaintiffs because their claims were the only claims remaining in the litigation.

. By pleadings filed June 10, 1996, Martin O. Miller II intervened in the proceedings, claiming that he too had an undivided interest in the property separate from his interests as trustee for the Edna K. Miller Foundation and as curator of Marie Diane Miller, interdict. There is no dispute that he is one of the children of Dr. and Mrs. Martin O. Miller and inherited an interest in the property.

. By a pleading filed June 7, 1996, this party was redesignated as Axis Energy Corporation.

. By a pleading filed June 7, 1996, this party was redesignated as Brammer Engineering, Inc.

. By a pleading filed June 7, 1996, this party was deleted from the petition and Maximum Energy Inc. was named in its place.

. At this juncture of the litigation, Pierre Valc-our Miller appeared individually and as administrator of the Estate of Max Kaplan.

. Norcen Explorer, Inc.; Columbia Gas Development Corporation; DeWalt Royalty, Inc.; Patrick W. Robertson; Linder Oil Company; Forest Oil Corporation; Sun Oil Company; J.A. Heath; and Trice Production Company.

. Mobil Exploration & Producing U.S. Inc., as agent for Mobil Oil Exploration & Producing Southeast Inc.; Vintage Petroleum Inc.; Vastar Resources, Inc.; Presidio Exploration Inc.; TBI Exploration, Inc.; Axix Energy Corporation; Brammer Engineering, Inc.; Brammer-Keystone Energy, L.L.C.; Maximum Energy, Inc.; DeWalt Royalty, Inc.; and Petro Ventures, Inc.

. Amoco Production Company, Tennessee Gas Transmission Company, Pan American Petroleum Company, Tennessee Pipeline Company, Tennessee Gas Pipeline Company, Transcontinental Gas Pipeline Corporation, United Gas Pipe Line Company, Farmland Industries, and Ocean Drilling and Exploration Company.

. Apache Corporation and Unocal Pipeline Company.

. The State of Louisiana, Amoco Production Co, and Myerl Hebert.

. John M. Currier, trustee for the Mary Lynn Miller Trust; Martin O. Miller II, trustee for the Margaret Marian Miller Trust; the Marie Diane Miller Trust; the Martin O. Miller II Trust; Edward S. Rapier, trustee for the Mildred Ann Miller Trust; Lawrence Kavanagh, trustee for the Judith Owen Miller Trust; Dr. Richard Stoebner, trustee for the Mary Edna Miller Trust; and the Succession of Mrs. Martin O. Miller.

. DeWalt Royalty, Inc.; Mobil Exploration & Producing Southeast, Inc.; Cox & Perkins Exploration, Inc.; DDD Energy, Inc.

. David Y. Doland, Jr., an heir of David Y. Doland and Estelle Miller Doland, and any other heirs of David Y. Doland and Estelle Miller Do-land.

. Appellant claims that Myerl Hebert may claim title to Tract 83 of the property by virtue of acquisitive prescription.

. Erroneously referred to in the judgment as La.Civ.Code arts. 641 and 642.

. Prior lo its amendment by Acts 1990, No. 971, § 1, La.R.S. 31:179 reád as follows:
The owner of a mineral right or interest therein is a necessary party to an action for partition of the land subject to his right. If the owner of a mineral right or interest therein is not made a party to such an action, the partition is not invalid, but the right or 'interest therein is not extinguished or otherwise affected.